## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**CHASE BAILEY,**                                                  **CASE NO.:**

      **Plaintiff,**

**v.**

**CHIP SIMMONS in his official capacity as**
**SHERIFF, ESCAMBIA COUNTY, FLORIDA and**
**JAKE BANDURSKI, in his individual capacity,**

      **Defendant.**
_____/

## COMPLAINT

Plaintiff, CHASE BAILEY, hereby sues Defendant, CHIP SIMMONS in his official capacity as SHERIFF, ESCAMBIA COUNTY, and JAKE BANDURSKI, in his individual capacity, and alleges:

## NATURE OF THE ACTION

1.    This is a civil action seeking monetary damages, declaratory judgment, and legal, equitable, and injunctive relief against Defendant. This is an action brought under the common law of the State of Florida and through 42 U.S.C. §1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to the Plaintiff by the Constitution and laws of the United States, and 42 U.S.C. §1988 which authorizes the award of

attorney's fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. §1983.

2.     This is an action involving claims which are, individually, in excess of Seventy Five Thousand Dollars ($75,000.00).  Jurisdiction of this Court is invoked pursuant 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. §1343 (civil rights claim jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

## PARTIES

3.     At all times pertinent hereto, Plaintiff, CHASE BAILEY, has been a resident of ESCAMBIA, County, FL during the occurrences listed here forth.  He is *sui juris*.

4.     At all times pertinent hereto, Defendant, CHIP SIMMONS in his official capacity as SHERIFF, ESCAMBIA COUNTY, Florida (hereinafter "SHERIFF") has been organized and existing under the laws of Florida as a law enforcement agency known as the ESCAMBIA COUNTY SHERIFF'S OFFICE ("ECSO") located in ESCAMBIA COUNTY, Florida.

5.     At all times pertinent hereto, Defendant, and JAKE BANDURSKI individually, was a resident of the State of Florida and was employed by Defendant SHERIFF as a SERGEANT. He is *sui juris*.

2

## CONDITIONS PRECEDENT

6.     Plaintiff has satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF THE ULTIMATE FACTS

7.     On March 20, 2023, deputies from the Escambia County Sheriff's Office were dispatched to the residence of Chase Bailey after false reports were made by his roommates alleging that Mr. Bailey possessed a weapon.

8.     Upon the arrival of three officers at the residence at 11:16 a.m., they entered through the unlocked front door. Upon arrival, deputies promptly determined that the weapon Mr. Bailey was alleged to have was fake.

9.     Notably, Mr. Bailey was in the midst of a mental health crisis. He was at risk of losing his job, his girlfriend of three years had broken up with him, and he was experiencing excruciating pain in his eye due to a corneal abrasion he sustained while attempting to insert an old contact lens. He was in a poor mental state. The responding deputies, including Sgt. Bandurski, were aware that Mr. Bailey was experiencing a mental health crisis as he was expressing suicidal thoughts, stating he did not want to hurt anyone, and indicating he missed his mother. His statements and behavior clearly demonstrated that he posed no threat to the officers.

10.     As the officers commanded Mr. Bailey to exit his room, he initially hesitated out of fear. Mr. Bailey placed a call to his mother and set the phone down so she could hear the unfolding events.

11.     While still inside his room, Mr. Bailey opened the door a few times to peek out, visibly frightened. Sgt. Bandurski engaged Mr. Bailey in conversation, stating "Can you tell me what's going on today? I can't hear you through the door. Can you open the door? So, you miss your mom? Can you tell me one more time? I can't hear you. Chase, tell me what's going on. Where's your mom at?"

12.     Mr. Bailey then exited his room without any weapons, presenting himself in a calm, non-threatening manner, following the orders that had been given to him by Sergeant Jake Bandurski. Without issuing a warning, and within four minutes and twenty seconds of entering the apartment, Bandurski tased Mr. Bailey.

13.     Bandurski deployed the taser against Mr. Bailey, who was unarmed, non-threatening, and compliant. At no point did Mr. Bailey resist or attempt to evade the deputies. Despite these facts, Bandurski violated departmental policy by failing to announce the use of the taser to either Mr. Bailey or other deputies on the scene. The taser probes struck Mr. Bailey in his chest and groin—areas contrary to standard law enforcement protocol for taser deployment.

14.    Upon being tased, Mr. Bailey fell forward, striking the top left side of his head on the floor. He lost consciousness intermittently and suffered a significant nosebleed. At around 11: 22 a.m., an ambulance was called to the scene.

15.    Mr. Bailey's brother, Chad Bailey, who had been alerted to the situation by Christensen, arrived shortly thereafter around 11:35 a.m. The ambulance arrived at approximately 11:41 a.m. Ten minutes later, the paramedics placed Mr. Bailey on a gurney and into the ambulance. However, the EMS crew stood in the parking lot for an additional 20 minutes discussing which hospital to transport Mr. Bailey to. Christensen advised Chad Bailey to inform the EMS crew to take Mr. Bailey to Baptist Hospital. By the time the ambulance began transporting Mr. Bailey to the hospital, approximately 50 minutes had passed since he was tased.

16.    As a result of the force used on Chase Bailey, he sustained severe and life-altering injuries, including but not limited to, a left frontal temporal contusion (brain bleed), moderate traumatic brain injury (TBI), focal motor seizures, hemiparesis, neuropathic pain, severe anxiety, depression, and aphasia. He was hospitalized for approximately two months and was then in a rehabilitation facility for one week. Mr. Bailey remains permanently disabled due to the traumatic brain injury.

17.    While waiting for EMS in the apartment, 4-5 officers can be heard on body camera footage having a conversation, while Chase Bailey is lying on the floor, bleeding from his nose, in and out of consciousness. One officer remarked, "He's having a good nap now!" Another comments were made including "We need to take a picture of him. He could send it out for Christmas cards, with that red nose!"

18.    Despite Mr. Bailey's clear need for medical attention and mental health care, the deputies failed to employ appropriate measures under the circumstances. Mr. Bailey should have been treated with care and compassion and appropriately Baker Acted, rather than being subjected to unnecessary and excessive force.

19.    Body camera footage from the scene described above captures a conversation between Sgt. Bandurski and Sgt. Chad Brown as they ride the elevator to retrieve an AED device from Bandurski's car. Bandurski explained that he tased Mr. Bailey after he came out of a room, and Brown asked whether there was a weapon involved. Bandurski responded that Mr. Bailey appeared to have a gun, possibly a pellet gun, but it was not on him. He further stated that Mr. Bailey was suicidal and trying to provoke the officers into killing him. Bandurski implied that the situation was a "suicide by cop" scenario, which misrepresented the true situation as Mr. Bailey was actually seeking help. Later, while still in the

apartment, Deputy Brock asked Bandurski if Mr. Bailey had anything in his hands when he came out, to which Bandurski replied "no". Brock then inquired if Bandurski saw where the taser prong hit, and Bandurski replied "no" after which Brock informed him that it hit the "tip of his pecker". Bandurski laughed, dismissively stating, "Well, I could've hit him in the head. So, I saw a way to end it. Didn't need to drag it out." This conversation demonstrated Bandurski's lack of professionalism and disregard for both the proper use of force and Mr. Bailey's well-being.

20.    Notably, on the evening of March 20, 2023, around 8:00 p.m., Christensen's husband called the Sheriff's office to inform them that Mr. Bailey was in the Neuro ICU at Baptist Hospital. They had just been notified by Mr. Bailey's neurosurgeon that he might not survive the night. The following morning, at 8:00 a.m., Lieutenant Coad visited Mr. Bailey at the hospital to verify the information and assess the extent of his injuries. Afterward, all three officers who were present in the apartment during the incident revised their original reports. Sergeant Bandurski's report, in particular, was significantly different than his original report.

21.    Bandurski revised his initial Use of Force Report, falsely stating that Chase was actively resisting or evading arrest, thereby portraying Mr. Bailey as the aggressor. This claim was not included in his original report nor is it supported by

the body worn camera. Additionally, Bandurski asserted in his second report that the timing was unsuitable to announce the use of his taser, which is untrue.

22.    Additionally, in contrast, a female deputy present during the incident initially reported that the officers immediately recognized the weapon as fake. This statement directly contradicts Bandurski's subsequent revised assertion, in which he falsely claimed to have believed the weapon was a semi-automatic firearm.

23.    Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services.  Defendant should be made to pay said fee under the laws referenced above.

**COUNT I**
**COMMON LAW NEGLIGENCE**
**(Against Defendant CHIP SIMMONS in his official capacity as SHERIFF, ESCAMBIA COUNTY, Florida)**

24.    Paragraphs 1 through 23 are re-alleged and incorporated herein by reference.

25.    This count sets forth a claim against Defendant SHERIFF for common law negligence. Defendant SHERIFF knew or should have known that Plaintiff was within a zone of risk related to contact with its agents/employees.

26.    Defendant SHERIFF owed a duty of care to Plaintiff due to the nature of the relationship between Plaintiff and Defendant SHERIFF had a special relationship with Plaintiff and, consequently, a duty of care was attendant thereto.

Alternatively, legal duties devolved upon Defendant SHERIFF because Plaintiff was in the foreseeable zone of risk to be harmed by the actions thereof.

27.    Defendant SHERIFF further breached its duty to properly supervise its employee and agents, to ensure the safety of the Plaintiff and/or to properly investigate the circumstances of criminal and/or tortious activity.

28.    The actions of Defendant SHERIFF's employees and agents and a complained of herein were "operational" functions, i.e., functions that were not necessary to or inherent in policymaking or planning, that merely reflected secondary decisions as to how policies or plans were to be implemented.

29.    As a direct and proximate result of the above unlawful acts and omissions, Plaintiff sustained damages, including bodily injury, emotional pain, anguish, lost wages and other remuneration, humiliation, insult, indignity, loss of self-esteem and inconvenience and hurt and other tangible and intangible damages. These damages have occurred in the past, at present and will certainly occur in the future. Defendants are jointly and severally liable to Plaintiff.

## COUNT II
## NEGLIGENT SUPERVISION
### (Against Defendant CHIP SIMMONS in his official capacity as SHERIFF, ESCAMBIA COUNTY, Florida)

30.    Paragraphs 1 through 23 are re-alleged and incorporated herein by reference. This Count is pled in the alternative.

31.    This count sets forth a claim against Defendant SHERIFF for negligent supervision.

32.    Defendant SHERIFF breached its duty to properly supervise Defendant SERGEANT BANDURSKI and other officers, employees, and agents. To wit, Defendant SERGEANT BANDURSKI was able to use excessive force against Plaintiff without any discipline or supervision.

33.    The breach of this duty to properly supervise Defendant SERGEANT BANDURSKI and other employees and agents resulted in damages and injury to Plaintiff.  Defendant SHERIFF knew or should have known that the actions, omissions, and derelictions of officers, employees, and agents could cause injury to Plaintiff.

34.    Defendant SHERIFF breached its duties supervise its employees and agents while on duty and take appropriate disciplinary actions against said employees and agents.

35.    As a direct and proximate result of the above unlawful acts and omissions, Plaintiff sustained damages, including bodily injury, emotional pain, anguish, lost wages and other remuneration, humiliation, insult, indignity, loss of self-esteem and inconvenience and hurt and other tangible and intangible damages. These damages have occurred in the past, at present and will certainly occur in the future.  Defendants are jointly and severally  liable to Plaintiff.

**COUNT III**
**BATTERY**
**(Against Defendant SHERIFF)**

36.    Paragraphs 1 through 23 are realleged and incorporated herein by reference.

37.    This count sets forth a claim against Defendant SHERIFF for common law battery. For the purpose of this Count alone, Defendant Bandurski and the other deputies at the scene were acting inside the course and scope of their employment with Defendant Sheriff.

38.    Plaintiff is entitled to relief against Defendant in that through its officers, employees and agents, Defendant, without justification or the Plaintiff's consent, touched Plaintiff's person in an offensive and harmful manner, in Defendant Bandurski battered Plaintiff, tased him and caused Plaintiff to sustain injuries.

39.    Defendant, through its agents and/or employees, intended to hit, tase and otherwise batter Plaintiff.  This unlawful touching was also accomplished by Defendant, through its agents' and/or employees' touching or contact with Plaintiff without any justification and in the absence of cause to touch or contact Plaintiff. Defendant Sheriff intended to cause harm to Plaintiff or knew or should have known there was substantial certainty that harm would occur.

40.     Defendant ratified the misconduct of its officers, employees and/or agents in that it was aware of their misconduct and sanctioned their decisions.

41.     As a direct and proximate cause of Defendant Sheriff's actions, Plaintiff has been damaged, which damages include: mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments.  These damages have occurred at present, in the past and will most likely occur in the future. Defendants are jointly and severally liable to Plaintiffs.

### COUNT IV
### BATTERY
### (Against Defendant JAKE BANDURSKI)

42.     Paragraphs 1 through 23 are realleged and incorporated herein by reference.

43.     This count sets forth claims against Bandurski for common law battery. This count is pled in the alternative, and for the purposes of this count alone, Defendant BANDURSKI was acting outside the course and scope of employment with Defendant SHERIFF.

44.     Plaintiff is entitled to relief against Defendant BANDURSKI in that he intended to batter the Plaintiff.  Defendant intended to cause harm to Plaintiff and/or knew or should have known there was substantial certainty that harm would occur.

45.     Defendant acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard of human rights and safety.

46.    As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged, which damages include: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments.  These damages have occurred at present, in the past and will most likely occur in the future.

**COUNT V**
**FOURTH AMENDMENT VIOLATION-EXCESSIVE FORCE**
**(Against Defendant BANDURSKI)**

47.    Plaintiff re-alleges paragraphs 1 through 23 above and incorporates those allegations in this Count. This count is pled in the alternative.

48.    This count sets forth a claim against Defendant for violation of the Fourth Amendment to the U.S. Constitution, based on excessive force, which claims are brought through 42 U.S.C. §1983.

49.    Defendant used excessive force against Plaintiff, as set forth in part above, without justification, consent, cause or lawful authority.

50.    Defendant intended to damage Plaintiff, in that their harmful acts were purposeful, and also in that such acts were substantially certain to result in injury and harm.

51.    Defendant acted to violate Plaintiff's right not to be subjected to the excessive use of force under the Fourth Amendment to the United States

Constitution. These violations were of the type and character as to which any reasonable person would be aware.

52.    Defendant is liable to Plaintiff for his conduct in violating Plaintiff's rights under the Fourth Amendment to the U.S. Constitution.

53.    Defendant misused his power, possessed by virtue of state law and made possible only because of the authority of state law. The violation of Plaintiff's rights, as described in part above, occurred under color of state law, and is actionable under 42 U.S.C. §1983.

54.    The foregoing actions of Defendant was willful, wanton, and in reckless disregard of Plaintiff's rights, and were taken without any lawful justification.

55.    The use of excessive force by Defendant is not part of the penalty that citizens have to pay prior to, during and/or after being charged with a juvenile or criminal offense and determines a cognizable claim in violation of the Fourth Amendment.

56.    Defendant knew or should have known that his actions against Plaintiff were excessive given the clearly established law.

57.    Based upon the facts presented to Defendant and the applicable law, no reasonable person, company, government agency or law enforcement agency could have concluded that there existed any reasonable cause or legal basis for tasing Plaintiff. The law was settled and clearly established that the actions of Defendants

constituted excessive force under the Fourth Amendment at the time the acts were engaged in.

58.    The actions or inactions of Defendant, set forth in part above, constituted deliberate indifference and/or reckless disregard for Plaintiff when Defendant knew of and disregarded Plaintiff's rights, and thus Defendant's actions or inactions constituted the use of excessive force in violation of the Fourth Amendment.

59.    Defendant was acting under color of state law at all pertinent times. His use of excessive force violated the proscription thereof set forth in the Fourth Amendment.  Defendant misused his power, possessed by virtue of state law and made possible only because of the authority of state law. Defendant is a person under applicable law.

60.    The foregoing actions of Defendant was willful, wanton, and in reckless disregard of Plaintiff's rights.

61.    As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged, which damages include physical pain, mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments.  These damages have occurred at present, in the past and will most likely occur in the future. Defendant is jointly and severally liable to

Plaintiff under this count.  Plaintiff is entitled to awards of punitive damages against

Defendant SERGEANT BANDURSKI under this count.

## COUNT VI
### (Against CHIP SIMMONS, in his official capacity)

62.    Plaintiff re-alleges paragraphs 1 through 23 above and incorporates

those allegations in this Count. This count is pled in the alternative.

63.    This count sets forth a claim against Defendant Simmons for violation

of the Fourth and Fourteenth Amendments of the U.S. Constitution, based on

excessive force, which claims are brought through 42 U.S.C. §1983.

64.    Defendant used excessive force against Plaintiff, as set forth in part

above, without justification, consent, cause, or lawful authority.

65.    Defendant intended to damage Plaintiff, in that the harmful actions of

his deputies were purposeful, and also in that such acts were substantially certain to

result in injury and harm.

66.    The Defendant acted to violate Plaintiff's right not to be subjected to

the excessive use of force under the Fourth and Fourteenth Amendments to the

United States Constitution. These violations were of the type and character as to

which any reasonable person would be aware.

67.    Defendants are liable, jointly and severally, to Plaintiff, for their

conduct, individually and in concert, in violating Plaintiff's rights under the Fourth

and Fourteenth Amendments to the U.S. Constitution.

68.    Defendant misused his power, possessed by virtue of state law and made possible only because of the authority of state law.  The violation of Plaintiff's rights, as described in part above, occurred under color of state law, and is actionable under 42 U.S.C. §1983.

69.    The foregoing actions of Defendant were willful, wanton, and in reckless disregard of Plaintiff's rights, and were taken without any lawful justification.

70.    The use of excessive force by Defendant is not part of the penalty that citizens have to pay prior to, during and/or after being charged with a juvenile or criminal offense and determines a cognizable claim in violation of the Fourth and Fourteenth Amendments.

71.    Defendant knew or should have known that the actions of his deputies against Plaintiff were excessive given the clearly established law.

72.    Based upon the facts presented to Defendant and the applicable law, no reasonable person, company, government agency or law enforcement agency could have concluded that there existed any reasonable cause or legal basis for the force used against Plaintiff.  The law was settled and clearly established that the actions of Defendant constituted excessive force under the Fourth and Fourteenth Amendments at the time the acts were engaged in.

73.     The actions or inactions of Defendant, set forth in part above, constituted deliberate indifference and/or reckless disregard for Plaintiff's rights when Defendant knew of and disregarded Plaintiff's rights, and thus Defendant's actions or inactions constituted the use of excessive force in violation of the Fourth Amendment.

74.     Defendant was acting under color of state law at all pertinent times. The Sheriff's use of excessive force violated the proscription thereof set forth in the Fourth Amendment. Defendant misused the power of his office, possessed by virtue of state law and made it possible only because of the authority of state law. Defendants are persons under applicable law.

75.     Defendant Sheriff was the final policymaker for his office.  Not only was he deliberately indifferent in failing to train Bandurski in the proper use of force, but he permitted the cover up of the force used when the reports on the incident with Plaintiff were changed to place blame on Plaintiff and to change the facts to support the use of force when none existed.  No discipline was imposed on Bandurski or the other deputies for their misconduct thus supporting Plaintiff's claim that the Defendant Sheriff ratified their conduct.

76.     Defendant Sheriff was deliberately indifferent to his employees' actions which allowed a custom and practice of excessive force against persons such as Plaintiff and the cover up thereof.

77.     Defendant Sheriff either failed to adequately train the deputies engaged in the excessive force or condoned their actions afterward.  It was obvious that the use of force reports that were prepared by the deputies involved in the use of force against Plaintiff were false and not supported not only by the facts in the original reports but also in the video footage of the incident.

78.     The foregoing actions of Defendants were willful, wanton, and in reckless disregard of Plaintiff's rights.

79.     As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged, which damages include physical pain, mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments.  These damages have occurred at present, in the past and will most likely occur in the future. Defendants are jointly and severally liable to Plaintiff under this count.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff prays for the following relief:

(a)   that process issue and this Court take jurisdiction over this case;

(b)   that this Court grant equitable relief against Defendants under the applicable counts set forth above, mandating Defendants'

obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)   enter judgment against Defendants and for Plaintiff awarding damages to Plaintiff from Defendants for Defendants' violations of law enumerated herein;

(d)   enter judgment against Defendants and for Plaintiff permanently enjoining Defendants from future violations of the state and federal laws enumerated herein;

(e)   enter judgment against Defendants and for Plaintiff awarding Plaintiff attorney's fees and costs on the applicable counts; and

(f)   grant such other further relief as being just and proper under the circumstances.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demand a trial by jury on all issues set forth herein which are so triable.

Dated this 21st day of February, 2025.

Respectfully submitted,


/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com
discovery@mattoxlaw.com


ATTORNEYS FOR PLAINTIFF